UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:19cv113-MOC

| | |
|---|---|
| **VICTORIA EPLEE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| **ANDREW SAUL,** ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 10, 12). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

**I.    Administrative History**

Plaintiff's SSI application alleged disability onset of April 5, 2005, but was amended at hearing to September 1, 2015, over ten years later. (Tr. 20). The application was denied initially on October 26, 2015, and, upon reconsideration, on February 4, 2016. (Id.). Plaintiff timely requested an administrative hearing, which was held on January 9, 2018. (Tr. 39-75). An ALJ decision denying benefits was made on February 23, 2018. (Tr. 20-33).

Plaintiff appealed to defendant's Appeals Council (AC), which, on February 7, 2019, denied plaintiff's request for review, thereby causing the ALJ's decision to become the "final

-1-

decision" of the Commissioner. (Tr. 2-7). Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In a decision dated February 23, 2018, (Tr. 1, 20-33), the administrative law judge (ALJ) found plaintiff had the following severe impairments: migraines, major depressive disorder, and generalized anxiety disorder. (Tr. 22, Finding 2). The ALJ, with detailed explanation, found plaintiff's alleged foot pain, MRSA infections, and seizures to be non-severe impairments. (Tr. 22-25). In so doing, the ALJ pointed out that at the hearing plaintiff admitted she has not had a seizure in over 2 years. (Tr. 24, 47).

The ALJ further found plaintiff had the residual functional capacity (RFC)[1] to perform a restricted range of unskilled, light work. (Tr. 26, Finding 4). The ALJ limited plaintiff to an environment that does not require interaction with the public. (Id.). Plaintiff was also limited to work that is not team-based and is not dependent on close interaction with coworkers or supervisors for the performance of on the job duties. (Id.).

The ALJ detailed the evidence considered in formulating the RFC. (Tr. 22-32). Therefore, the ALJ performed a functional analysis in determining RFC. Based on the established RFC, the ALJ denied benefits, with the help of vocational expert (VE) testimony, at Step 5 of the sequential evaluation process (discussed below), finding plaintiff would be able to perform other jobs existing in significant numbers in the national economy. (Tr. 32-33, Finding 9).

Having propounded a hypothetical question to the VE with the established RFC, the VE testified such a hypothetical person could perform certain unskilled, light-exertional jobs. (Tr. 33, 71-74). The VE listed the jobs of Office Helper, enumerated in the Dictionary of Occupational Titles (DOT) (DOT number 239.567-010); Routing Clerk (DOT number 222.687-022); and Shipping and Receiving Weigher (DOT number 222.387-074). (Id.). The VE further testified the same jobs would be available if the hypothetical person was unable to push or pull with leg controls, was unable to work around unprotected heights or hazardous machinery, or was unable to operate motor vehicles. (Tr. 72-73). The VE further agreed to tell the ALJ if his testimony was inconsistent with the DOT. (Tr. 71).

**V.     Discussion**

---

[1] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. § 404.1545.

Plaintiff raises three challenges to the ALJ's decision: (1) the ALJ erred by omitting simple work from the RFC, which, if included, would have created a conflict with the DOT; (2) the ALJ erred in discounting the opinion of medical consultant Pardoll; and (3) the ALJ erred by finding plaintiff's subjective complaints not entirely consistent with the evidence of record. As discussed below, these arguments do not present a basis for remand.

**A. Plaintiff's Contention that the ALJ Erred by Omitting Simple Work from the RFC, Which Would Have Created A Conflict with the DOT if Included**

Plaintiff first argues the ALJ erred by omitting simple work from the RFC, which, if included, would have created a conflict with the DOT. The Court disagrees.

**1. Unskilled Work is Simple Work**

First, the ALJ properly equated "unskilled work (SVP 2 or less)" with "simple work." Unskilled work is defined in the disability regulations as work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). A simple "task" and a simple "duty" are the same. See Merriam-Webster Online Dictionary (definition of "task" includes a "duty"). Therefore, the disability regulations equate unskilled work with simple work. Thus, the ALJ did not err in using the terms "unskilled" and "simple" interchangeably in formulating the established RFC. As pointed out in plaintiff's brief, the ALJ, in giving great weight to psychological consultants Drs. Robertson and Strobel-Nuss, found "that the claimant's chronic anxiety and depression would likely limit the claimant to simple work." (Tr. 30).

**2. No DOT Conflict exists with the VE identified Jobs**

Second, the fact the RFC calls for unskilled (or simple) work does not create a DOT conflict with the VE identified jobs. As mentioned, the VE identified the jobs of Office Helper,

(DOT number 239.567-010); Routing Clerk (DOT number 222.687-022); and Shipping and Receiving Weigher (DOT number 222.387-074). (Tr. 33, 71-74). The jobs of Routing Clerk and Office Helper have a DOT reasoning level of 2, and the job of Shipping and Receiving Weigher has a DOT reasoning level of 3. All these jobs have an unskilled SVP of 2. The VE testified that all of these jobs exist in significant numbers. (Tr. 72). The VE further did not indicate any conflict existed with the DOT vis-à-vis the RFC with the jobs identified. (Tr. 71).

General Education Development (GED) reasoning levels of two or three do not preclude the performance of "unskilled work" as specified in the ALJ's RFC. (Tr. 26, Finding 4). There is no specific authority in the Social Security regulations or Social Security Rulings to support the alleged significance of the DOT's GED classifications in Social Security disability adjudication, other than a general statement that the agency takes administrative notice of the DOT. See 20 C.F.R. § 404.1566(d)(1). The regulations define three, and only three, classifications of skill level that are used "to evaluate [a claimant's] skills and to help determine the existence in the national economy of work [a claimant is] able to do": unskilled work, semi-skilled work, and skilled work. See 20 C.F.R. § 404.1568.

**a. Reasoning Level 2**

Several courts have held that a GED reasoning level of 2 does not preclude the performance of simple, routine tasks (SRTs) and, therefore, does not present any apparent conflict which needs to be addressed pursuant to Pearson v. Colvin, 810 F.3d 204, 210-212 (4th Cir. 2015). In Sigmon v. Berryhill, No. 5:17-cv-120, 2018 WL 4576788, at *4 (W.D.N.C. Apr. 5, 2018), the Court, referencing Henderson, stated:

> Plaintiff argues that the office helper and inspector/packer jobs identified by the V.E. require GED reasoning levels of two, which conflicts with the RFC limitation to simple, routine, repetitive tasks. This Court has consistently held that there is no conflict between reasoning level two work and a limitation to

simple tasks. Courtney v. Colvin, No. 12cv0073, 2014 WL 1882583, at * 3 (W.D.N.C. May 12, 2014) (citing Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24, 2010) ("work requiring a reasoning level of two is not inconsistent with a limitation to simple work")). The Fourth Circuit's unpublished decision in Henderson v. Colvin, 643 F. App'x 273, 276–77 (4th Cir. Apr. 5, 2016) cited by Plaintiff does not suggest a different result. There, the Court addressed a limitation to "one-to-two step tasks," which is different from the RFC limitation here.

Furthermore, a limitation to "unskilled work" indicates that any instructions would be uninvolved to satisfy reasoning level two concerns, which require employees to carry out "detailed but uninvolved" instructions. This Court has held that no apparent conflict exists between a limitation to perform SRTs and jobs with Reasoning Level 2. Lambert v. Berryhill, No. 5:18-CV-00028-RJC-DSC, 2019 WL 1354038, at *6 (W.D.N.C. Mar. 26, 2019) (footnotes omitted). See also, e.g., Beasley v. Berryhill, No. 1:17-CV-00294-RJC, 2019 WL 1330928, at *4 (W.D.N.C. Mar. 25, 2019); Kiser v. Berryhill, No. 3:17-CV-00739 FDW, 2019 WL 1173376, at *6 n.2 (W.D.N.C. Mar. 13, 2019).

**b. Reasoning Level 3**

Next, several courts have held that a GED reasoning level of 3 does not preclude the performance of SRTs. In Simons v. Commissioner, No. RDB 17-1837, 2018 WL 3416943, at *3 (D. Md. July 13, 2018), the Court stated:

> Several district courts within the Fourth Circuit have held that there is no apparent conflict between Reasoning Level 3 jobs and RFC limitations to "simple, routine tasks" or "simple decisions." See, e.g., Johnson v. Comm'r, Soc. Sec. Admin., Civil Action No. ADC-17-1819, 2018 WL 2248412, at *10-11 (D. Md. May 16, 2018) (holding that there was no apparent conflict between the claimant's RFC limitation to "simple, routine, repetitive tasks" and Reasoning Level 3 jobs, while noting that "this Court has consistently found that reasoning levels of two or three are consistent with limitations to simple instructions."); Clarkson v. Comm'r, Civil No. SAG-11-631, 2013 WL 308954, at *1-2 (D. Md. Jan. 24, 2013) (holding that there is "no inherent inconsistency" between the claimant's RFC limitation to "low concentration, low memory and simple routine work" and Reasoning Level 3 jobs); but see Halpern v. Colvin, Civil No. TDC-14-2538, 2016 WL 429965, at *10 (D. Md. Feb. 4, 2016) (holding that, although "there is an apparent conflict

between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," the ALJ's failure to reconcile this apparent conflict was harmless because the VE identified other jobs consistent with the claimant's RFC) (citing Zavalin, 778 F.3d at 847).

Other courts not specifically referenced in Simons have also held that a GED reasoning level of 3 does not preclude performance of SRTs. See O'Neill v. Berryhill, No. 5:16-CV-129 DCK, 2017 WL 2469243 (W.D.N.C. June 7, 2017), aff'd, 723 Fed. Appx. 240 (4th Cir. May 25, 2018). See also Carringer v. Colvin, No. 2:13-cv-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014) ("There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work [emphasis supplied]; thus, jobs requiring an individual to perform such work is consistent with a DOT reasoning level of either 2 or 3."); Clontz v. Astrue, No. 2:12-cv-00013-FDW, 2013 WL 3899507, at *5 (W.D.N.C. July 29, 2013) (no inconsistency between reasoning level 3 and a limitation to simple, unskilled work); Martin v. Colvin, No. 1:14-cv-00234-RLV, 2015 WL 9094738, at *5 (W.D.N.C. Dec. 16, 2015) (finding "no merit" in the argument that reasoning level 3 is "inconsistent with the RFC's finding that Claimant is limited to simple, unskilled work").

### c. Thomas

The Court further finds that the RFC herein is distinguishable from the RFC adjudicated in the case cited by plaintiff in Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019). In Thomas, the RFC limited the claimant to "short, simple instructions." The words "short" and "instructions" do not appear in the RFC limitation in this case. A meaningful difference exists between a limitation to perform only unskilled (or simple) work—plaintiff's RFC limitation here—and a limitation to receive and follow short, simple instructions—the RFC limitation in Thomas. The first limitation accounts for a claimant's ability to perform certain job tasks,

whereas the second limitation accounts for a claimant's ability to comprehend job tasks. Thomas is, therefore, distinguishable from this case. Accord Lambert, 2019 WL 1354038, at *6. See also, e.g., Beasley, 2019 WL 1330928, at *4; Kiser v. Berryhill, 2019 WL 1173376, at *6 n.2.

In sum, the Court finds that the jobs identified by the VE raised no apparent conflict with the DOT's reasoning levels of 2 or 3, as argued by plaintiff. Furthermore, the VE has identified significant numbers of jobs in each reasoning level to support a denial of benefits. Accordingly, this argument does not present a basis for remand.

**B. Plaintiff's Contention that the ALJ Improperly Discounted the Opinion of Medical Consultant Pardoll**

The ALJ gave greater weight to the opinions of medical psychological consultants Drs. Jermaine Robertson and April Strobel-Nuss, (Tr. 30), than to the opinion of medical psychological consultant Dr. Mindy Pardoll, (Tr. 31). The ALJ was entitled to do this, as the ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c).

On September 20, 2015, Dr. Robertson concluded that plaintiff was capable of performing and completing simple tasks. (Tr. 87). On January 29, 2016, Dr. Strobel-Nuss found plaintiff had "the mental ability to perform simple tasks in settings with limited public contact." (Tr. 102). Drs. Robertson and April-Nuss' opinions provide substantial evidentiary support for the ALJ's RFC. As mentioned, substantial evidence can be even be less than a preponderance. State agency medical consultants are "highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1); see Lusk v. Astrue, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may

amount to substantial evidence where they represent a reasonable reading of the relevant evidence).

The ALJ adequately explained why he felt these consultants' opinions represent a reasonable reading of the evidence as opposed to consultant Pardoll, who opined on October 8, 2015, that plaintiff was unable to perform simple tasks. (Tr. 879). The ALJ noted that plaintiff "can maintain concentration and persistence adequately enough to attend to her personal needs, help care for her children, prepare meals, perform household chores, shop, travel unaccompanied, pay bills, count change, handle a savings account, and use a checkbook." (Id.). The ALJ also noted that, although during the Pardoll examination, plaintiff "was not able to perform serial 7's," she demonstrated adequate attention, and she could spell the word "world" backwards." (Tr. 25).

Furthermore, even consultant Pardoll found plaintiff "was able to understand, retain and follow instructions" and that "her attention span seemed adequate." (Tr. 879). This consultant also observed that plaintiff would be able to manage benefits in her best interest. (Id.). In addition, consultant Pardoll found plaintiff's "intellectual functioning seemed to fall in the average range based on her vocabulary bank, fluidity of speech, mathematical skills, and fund of knowledge." (Id.). Consultant Pardoll further found plaintiff friendly and cooperative with coherent thought content without distracted speech or delusions or perceptual disturbances. (Tr. 877-78). Thus, consultant Pardoll's findings appear to weigh against her opinion that plaintiff could not perform simple tasks.

As further pointed out by the ALJ, the opinion of consultant Pardoll is inconsistent with plaintiff's "performance on mental status testing (which revealed largely normal memory, cognition, and concentration), and inconsistent with the reported ability to care for others, attend

to her personal needs, cook, clean, shop, manage finances, and follow instructions." (Tr. 31). It is also inconsistent, as noted by the ALJ, with her "ability to manage her symptoms with only medication and psychotherapy, and her lack of need for emergent, crisis, or inpatient treatment." (Id.). It is further inconsistent, as noted by the ALJ, with a lack of evidenced "psychosis, mania, profound psychomotor retardation or agitation, or emotional lability." (Id.).

Furthermore, a mental status examination performed on October 14, 2015, shortly after the alleged amended disability onset, by a licensed Family Preservation Services clinical social worker found unremarkable motor activity, normal speech, friendly attitude, unremarkable affect, coherent thought progression and content, normal cognitive and intellectual function, normal memory, and average judgment and insight. (Tr. 888-89). The finding of normal judgment and insight by this licensed clinical social worker, (Tr. 890), directly contradicts the evaluation of consultant Pardoll, performed only a few days earlier, who opined that plaintiff's judgment was questionable and insight was inadequate. (Tr. 879).

As also pointed out by the ALJ, (Tr. 29), when seen on July 19, 2017, at the Mission Hospital Emergency Room for a sinus problem, plaintiff was found cooperative with appropriate mood and affect without notation of any psychiatric issue. (Tr. 928).

The Court concludes that when considering the above findings as a whole, the ALJ was correct in adopting the conclusions of consultants Robertson and Strobel-Nuss and in not adopting the conclusion of consultant Pardoll as to whether plaintiff had the ability to perform simple work.

**C. Plaintiff's Contention that the ALJ Erred in Determining that Plaintiff's Subjective Complaints Were Not fully Consistent with the Medical Evidence**

The ALJ also found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 30). As already pointed out, the ALJ found that plaintiff's "performance on mental status testing (which revealed largely normal memory, cognition, and concentration)" and her "reported ability to care for others, attend to her personal needs, cook, clean, shop, manage finances, and follow instructions" was inconsistent with allegations of being unable to perform simple work. (Tr. 31). Furthermore, the ALJ noted, "claimant's neurological examinations were consistently unremarkable." (Id.). In addition, the ALJ noted that when complaint with medication, plaintiff's psychological symptoms were well-controlled and that she did not routinely "exhibit memory deficits, concentration problems, or communication difficulties." (Id.).

For example, on October 16, 2015, and February 2, 2016, medical consultants Drs. Dakota Cox and Robert Pyle noted that plaintiff is neurologically intact. (Tr. 85, 100). On March 22, 2015, Dr. William Lewis of Mission Hospital found plaintiff neurologically intact with no signs of trauma. (Tr. 1051). Dr. Lewis remarked that a previous EEG was negative. (Id.).

On September 3, 2015, another emergency room physician at Mission Hospital found plaintiff to be "neurologically intact" even though she had been physically assaulted. (Tr. 839 841). Here, the ALJ's conclusion regarding a lack of corroborating evidence of plaintiff's subjective complaints is supported by substantial evidence.

VI.     **Conclusion**

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments

of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 10) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 12) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: October 25, 2019

Max O. Cogburn Jr.
United States District Judge